FRANK CRUZEN, Administrator, Appellant, v. D. DUNWOODY, Appellee.

EXCHANGE .OF PROPERTY: Presumption Attending Agreement as to "Boot" Money. Parties who exchange properties, and stipulate that their intention is to place themselves in the same situation as though they had made the trade three months earlier, and contract as to the amount which one must pay as "boot" money, are conclusively presumed to have adjusted in the agreed amount *every claim arising out of the transaction*. So held where the payee of the "boot" money attempted to recover rent collected by the other party during the three months prior to the actual exchange.

*Appeal from Mahaska District Court.*—H. F. WAGNER, Judge.

NOVEMBER 15, 1921.

PLAINTIFF brought this action for damages for breach of the covenants of a warranty deed, in that the defendant had failed to pay certain taxes upon the conveyed premises; wherefore the plaintiff had been compelled to pay the same. The defendant admitted his liability for such breach, and for the amount of damages claimed by the plaintiff, but set up a counterclaim for damages against the plaintiff for the collection of certain rents upon property conveyed by plaintiff to defendant, which rents were the property of the defendant, as alleged. The plaintiff denied all liability on the counterclaim, and averred that the items set up in such counterclaim had all been adjusted and included in a certain $4,000 note which was executed by plaintiff to defendant at the time of the execution of the contract and deed, whereby the defendant became entitled to such items. At the close of the evidence, the trial court directed a verdict for the defendant on his counterclaim. Plaintiff appeals.—*Reversed and remanded.*

*McCoy & McCoy, A. J. Walsmith,* and *S. V. Reynolds,* for appellant.

*Thomas J. Bray,* for appellee.

EVANS, C. J.—B. O. Cruzen, the original plaintiff, died pending suit, and his administrator was substituted. For convenience of discussion, we shall refer to the decedent as the party plaintiff. On May 26, 1919, Cruzen and Dunwoody entered into a contract for exchange of properties. Pursuant to such contract, warranty deeds were mutually exchanged, whereby each grantee assumed an existing mortgage upon the property purchased by him. The property conveyed by Dunwoody, consisted of a farm of 250½ acres, and was subject to a mortgage of $41,500. The property conveyed by Cruzen consisted of a store building in town, and was subject to an existing mortgage of $6,400. This contract constituted the consideration for the respective deeds. Each deed describes its consideration in identical terms, as "an exchange of property and one dollar." At the time of the exchange, each property was in the possession of a tenant, under lease. The lease upon the store property provided for a rental of $85 per month, payable upon the first

day of each month in advance. At the time of the execution of the contract, all rent accrued upon such property had been paid by the tenant to the landlord, and no unpaid rent had then accrued. The contract contained the following provisions:

"It is further agreed that both parties hereto shall pay the taxes on their respective premises for the year 1918, and each party will assume the lease now on the respective premises, which· leases are to be assigned. The insurance now upon said respective premises is to be assigned by the respective parties to the other.

"Possession of the respective properties to be given immediately.

"The intention of this contract is to place the parties in the same situation as though they had made a trade prior to March 1, 1919, possession to be taken on the 1st day of March, 1919.

"Deeds to the respective premises are to be executed by the respective parties and placed in escrow on or before the 29th day of May, 1919, with Irving C. Johnson at his office in Oskaloosa, Iowa."

The contract also provided that Cruzen should execute a promissory note to Dunwoody for $4,000. In assuming the existing mortgage upon the property purchased by him, each party assumed the interest thereon from March 1, 1919. It is upon this contract that defendant, Dunwoody, bases his counterclaim for $255, being $85 per month for the months of March, April, and May. The theory is that, under the terms of the contract, he was entitled to all rent accruing under the store lease for the months of March, April, and May, which rents had been previously collected by Cruzen. The main contention for the plaintiff is that the contract fixed the amount due in the adjustment from Cruzen to Dunwoody at $4,000, and that the item of $255 for rents already received by Cruzen was included in the note for $4,000. He introduced some evidence and offered more, tending strongly to prove that the $4,000 note included the item of $255 for rent collected by Cruzen. So much of such evidence as was introduced was stricken on motion, and all other offers were refused. One of such offers was a memorandum, alleged to contain the original figures which made up the adjustment between the parties at the time of the execution of the contract,

which showed the item of $255 for rent, as a part of the computation. This memorandum disclosed that the equity of Dunwoody in his farm over and above the mortgage was fixed at $21,125, and that the equity of Cruzen in his store building over and above the mortgage was $17,600.

A second contention for the plaintiff, Cruzen, is that all sums due from Cruzen to Dunwoody as a result of the contract must be presumed to be included in his promise to pay $4,000. Other contentions are made in his behalf which we have no occasion to notice. The theory adopted by the trial court was that, by the terms of the contract, Dunwoody was entitled to the rent for the months of March, April, and May, and that, therefore, the evidence offered by the plaintiff tended to contradict or vary the contract in that regard. In view of the fact that the contract by its terms was made to relate back *nunc pro tunc* to March 1, 1919, we will assume that the items of rent already accrued and collected by Cruzen, amounting to $255, would naturally and unavoidably enter into the consideration of the parties in adjusting their mutual obligations. We will assume also, for the sake of the argument, that it was mutually recognized by the parties as an item of credit in favor of Dunwoody. Does it follow that it must be deemed a separate and distinct item of liability under the contract? If, in the adjustment, a balance had been found in favor of Cruzen, and a note had been executed therefor by Dunwoody, could he have set up the item of $255 as an offset or counterclaim to such balance? Would not such item be deemed to have been absorbed in the striking of the balance? The balance having been found in favor of Dunwoody, is it any less true that, in the striking of such balance, all items of credit due Dunwoody were absorbed therein? The contract contains one promise to pay. The amount thus promised is fixed at $4,000. If the plaintiff had offered oral evidence to prove that the amount promised was less than $4,000, then the evidence would be objectionable, as varying the written contract. If the defendant should offer evidence to show that the amount promised was to be more than $4,000, such evidence would be alike objectionable. And yet this is the very effect of the allowance of the counterclaim. The counterclaim does not seek to hold the plaintiff liable for acts done subsequently to the

execution of the contract in violation thereof. Under defendant's theory, plaintiff was already liable for the $255, at the very time he signed the contract. It necessarily entered into the contemplation of the parties in the adjustment of the balance due from one to the other. There was no way that this item could be adjusted, except by payment to Dunwoody, or by including the item as a credit in the adjustment of the balance. If the amount due Dunwoody was $4,255, why should it be stated in the contract as $4,000? The defendant sues upon the contract. The contract contains a definite promise by Cruzen to pay a definite amount. This part of the contract is entirely consistent with every other part of the contract, nor is it inconsistent with the theory that the *nunc pro tunc* provision of the contract worked a credit of $255 in favor of Dunwoody. The contract does not purport to set out the items which make up the $4,000, nor is it essential that it should do so. The amount so fixed is presumed to have included every credit due either party. By way of further illustration, suppose that the contract had contained a promise by Cruzen to pay $255 to Dunwoody, instead of $4,000, and that he had given his note therefor, doubtless the defendant would hardly claim, in such a case, that, after taking Cruzen's note for $255, he could still sue him, as herein, for an additional $255. Yet such is the actual position occupied by the defendant. Plaintiff concededly owes the $4,000 fixed by the contract, and, so far as appears, has given his note therefor; and the defendant is in the position of claiming that the amount should be $255 greater than specified in the contract.

In view of our conclusion reached at this point, it is needless that we consider the question whether the oral evidence offered by plaintiff was admissible or not. In view of the fact that the contract was silent as to the items which made up the $4,000, there is something to be said for the admissibility of the evidence as to such items, if material, provided that it should not tend to show the amount due from Cruzen to be either less or more than $4,000. It is enough to say that the plaintiff had no need of the evidence, and that it was at least immaterial, even if competent.

It is our conclusion that whatever the effect of the *nunc pro*

*tunc* provision of the contract in giving rise to a credit in favor of the defendant, such credit is presumed to have been included in the adjustment of the balance between the parties, and that the specific amount fixed upon in the contract measures the full liability of the plaintiff. It necessarily follows that the motion of the plaintiff for a directed verdict in his favor for the amount of the taxes, with interest, should have been sustained. The judgment of the trial court is, accordingly, reversed, with directions to enter judgment for the plaintiff accordingly.— *Reversed and remanded.*

STEVENS, ARTHUR, and FAVILLE, JJ., concur.